UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROWENA TALLEY,

        Plaintiff,                    CIVIL ACTION NO. 06-13724

    v.                                  DISTRICT JUDGE ARTHUR J. TARNOW

MICHAEL J. ASTRUE,[1]              MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be granted, plaintiff's motion be denied, and the decision denying disability benefits be affirmed.

**II. Background**

      On May 16, 2002, plaintiff filed an application for Social Security Disability Insurance Benefits due to pain in her neck, right arm, and right shoulder, with a disability onset date of November 15, 2001. (Tr. 48-50, 64) Plaintiff has a high school education, with a work history

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), he is automatically substituted as the defendant in this civil action.

including employment as an automobile production worker and as a parts inspector. (Tr. 65, 102)

The Social Security Administration (SSA) denied plaintiff's claims on initial review. (Tr. 32-34) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 37) The hearing was held on June 10, 2004, before ALJ Douglas Jones. (Tr. 275-308) Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On July 12, 2004, the ALJ issued a decision denying plaintiff's claim. (Tr. 15-26) The ALJ determined that plaintiff had impairments best described as degenerative joint disease of both shoulders, status post arthroscopic decompression and repair on the right shoulder, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, status post hysterectomy, major recurrent depression, anxiety, and a history of alcohol abuse. (Tr. 22) The ALJ further determined that plaintiff's impairments were collectively "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that she did not have an impairment or combination of impairments that met or equaled any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations. (Tr. 22) In addition, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a range of light work[2] and that there were a significant number of jobs in the local economy that she could

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do

perform within that RFC. Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 26) Plaintiff was 51 years-old at the time of the ALJ's decision. (Tr. 24-25)

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council. (Tr. 11) The Appeals Council denied the request on June 28, 2006. (Tr. 5-8) The ALJ's decision thus became the final decision of the Commissioner.

On August 22, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff claims that the ALJ erred in assessing plaintiff's credibility, evaluating the medical records, and forming the hypothetical question posed to the vocational expert. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

substantially all of those activities. 20 CFR 404.1567(b).

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards.  Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Brainard, 889 F.3d at 681.  Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.

**IV.  Analysis**

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity.  Specifically, the ALJ asked the VE to assume:

> A hypothetical individual at the claimant's age, which is currently 50, and education which includes the completion of high school,

> and the past work experience that you've indicated in Exhibit 9E, who is able to perform light work that involved only lifting or carrying 10 pounds instead of the usual 20 that is relat – goes with light work, or the definition of light work, and it would involve the only occasional pushing and pulling with the arms, and would involve occasional bending at the waist and occasional bending at the knees and occasional kneeling, no crawling, forward reaching with either arm, and no overhead reaching with the . . . dominant right arm, and no use of vibrating tools.  [Tr. 302]

In response to the hypothetical, the VE testified that such a person could work as a information clerk, security guard, and hostess, and that approximately 10,130 such jobs existed in the local economy.  (Tr. 302-303)  Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding.  The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. <u>Webb v. Commissioner of Social Security</u>, 368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged

-6-

limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of her physical limitations.  Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her arguments that ALJ failed to give the appropriate weight to the opinions of her treating physician and erred in assessing her credibility.

## A.  Treating Physician Opinions

Plaintiff's first claim is that the ALJ erred in failing to accord controlling weight to the opinions of her treating physician.  Plaintiff thus invokes the "treating physician" rule.  The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight.  When we doe not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and

severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

In support of her argument, plaintiff specifically points to reports of Dr. Gavin Awerbuch, her treating physician, both before and after plaintiff's shoulder surgery, advising that plaintiff continue her off work status and limit her activities at home.  (Tr. 190-191, 195, 198, 225)  Plaintiff also cites a July 24, 2002 report in which Dr. Awerbuch notes that plaintiff "has to constantly change positions and even lie down during the day" (Tr. 190), an April 2, 2003 report in which Dr. Awerbuch notes that plaintiff "is not sleeping well and still has a lot of fatigue during the day" (Tr. 229), and a February 23, 2004 report in which Dr. Awerbuch notes that plaintiff has to constantly change positions during the day, lie down frequently, and has poor concentration and fatigue.  (Tr. 246)

To the extent Dr. Awerbuch's recommendation that plaintiff continue her off work status can be interpreted as an opinion that plaintiff is too disabled to work at all, the ALJ is free to disregard it.  An ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work."  The regulations specifically provide that such a statement is not

a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R. § 404.1527(a)(2), (e)(1). The question of whether a claimant is disabled is reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(e)(1). Further, to the extent that the off-work recommendation constitutes an opinion that plaintiff is disabled, the opinion is not well-supported. Dr. Awerbuch first rendered that opinion at the very first appointment he had with plaintiff. Thus, the opinion was not based upon a "longitudinal picture of [plaintiff's] impairment." 20 C.F.R. § 404.1527(d)(2)(I).

If Dr. Awerbuch's recommendation that plaintiff continue her off work status is not interpreted as an opinion that plaintiff is too disable to work at any job, it is consistent with the ALJ's ruling. Dr. Awerbuch recommendations were made with regard to plaintiff's job at General Motors. That job, as documented by Dr. Awerbuch, required that plaintiff lift large parts weighing up to 35 lbs., repetitively bend, lift and reach overhead, and use air guns, power wrenches and other tools. (Tr. 196) The ALJ also concluded that plaintiff could not perform her past relevant work, lift more than 20 lbs., bend more than occasionally, lift overhead with both upper extremities, or use vibrating hand tools. (Tr. 25) Thus, the ALJ's ruling was consistent with Dr. Awerbuch's opinion regarding plaintiff's ability to do her past relevant work.

The ALJ's decision was also consistent with Dr. Awerbuch's recommendation that plaintiff limit her activities at home. In addition to the limitations listed above, the ALJ found that plaintiff could only occasionally climb stairs or reach forward with both upper extremities. The ALJ also found that plaintiff could not climb ladders, grip forcefully or grip on a sustained basis. (Tr. 25) In contrast to those detailed findings, Dr. Awerbuch only recommended that

plaintiff limit her activities at home. The most detailed recommendation Dr. Awerbuch made was that plaintiff "limit her home activities to tolerance." (Tr. 191) Dr. Awerbuch never described any specific limitations in home activities and nothing in his broad recommendation is inconsistent with the detailed limitations described in the ALJ's ruling.

The other reports plaintiff cites to do not contain Dr. Awerbuch's opinions. Instead, they merely describe Dr. Awerbuch's notations regarding plaintiff's complaints. The treating physician rule applies to the treating source's opinion on the nature and severity of the claimant's impairments and does not mandate that the ALJ defer to the plaintiff's subjective complaints, even if they are recorded by a treating physician. 20 C.F.R. 404.1527(d)(2).

In sum, the court concludes that the ALJ did not err in his declining to accord special deference to the findings and opinions of Dr. Awerbuch under the treating physician rule.

**B. Plaintiff's Credibility**

The ALJ determined that plaintiff's allegations regarding her limitations were not credible. (Tr. 21-24) An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Id. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also Walters, supra, 127 F.3d at 531. Rather,

"there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

In this case, evidence in the record does not support plaintiff's subjective complaints. The record contains evaluations and opinions of three doctors, and none of the doctors support plaintiff's subjective complaints. As discussed above, Dr. Awerbuch's recommendations are consistent with the ALJ's ruling. Moreover, following plaintiff's shoulder surgery, Dr. Awerbuch found that "medicines seem to be working out fairly well" (Tr. 188) and that plaintiff's Vicodin prescription has worked to keep her pain tolerable and allowed her to function. (Tr. 247)

Dr. Jerome Ciullo, plaintiff's orthopedic surgeon, examined plaintiff before he performed the surgery and he advised plaintiff that she could be fully active within the limits of her pain, range of motion and strength following her surgery. (Tr. 194) Two weeks after the surgery, plaintiff reported feeling better and Dr. Ciullo found that, while plaintiff's shoulder was tender, there was no excess swelling and good stability. (Tr. 152) Ten weeks following the surgery, Dr. Ciullo found that plaintiff was "right on schedule" and that her shoulder was stable with good strength. (Tr. 189)

Dr. Neil Friedman, a physical medicine and rehabilitation specialist, examined plaintiff on February 9, 2004. (Tr. 233-236) Dr. Friedman found that plaintiff had limited shoulder motion and full neck and low back range of motion. (Tr. 234-238) Dr. Friedman also observed

that plaintiff could walk on her heels and toes, squat and arise with some pain, and rise from a chair without difficulty.  (Tr. 234-235)  In addition to the physical examination, Dr. Friedman also reviewed the reports of Dr. Awerbuch and Dr. Ciullo.  (Tr. 235-236)  In total, Dr. Friedman found that plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently, and that plaintiff could stand, walk, and sit without limitation.  Dr. Friedman did indicate that plaintiff should be limited in pushing, pulling, and reaching overhead due to her history of shoulder surgery and that she should avoid vibration in her hands (Tr. 239-241).

In addition to the findings of the doctors, the treatment they recommended and plaintiff's reaction that treatment weigh against her complaints.  An ALJ considers use of medication and other treatment when evaluating credibility.  20 C.F.R. 404.1529(c)(3)(iv)-(v).  In this case, both treating physicians, Dr. Awerbuch and Dr. Ciullo, were content with a conservative course of treatment following plaintiff's surgery.  Dr. Awerbuch recommended physical therapy and medication.  (Tr. 188, 247).  Dr. Ciullo recommended physical therapy and, later postural exercises.  (Tr. 152, 221)  Such conservative treatment suggests that plaintiff's pain was not severe.

Plaintiff, at times, indicated that the medication was effective.  (Tr. 300-301)  Plaintiff also failed to complete physical therapy. On August 15, 2002, plaintiff indicated that she was too busy and had too much going on to attend physical therapy.  (Tr. 214)  Later, she failed to attend or call in absent for three sessions.  She also never returned phone calls to reschedule.  (Tr. 209)  Plaintiff was discharged from physical therapy for noncompliance.  (Tr. 209)  Plaintiff's failure to follow her course of treatment because she was too busy, supports the ALJ's determination

that her complaints of pain were not credible. Her reasons for failure to attend physical therapy belie her claims that her pain was as severe as she alleged.

The ALJ also noted that the evidence in the record regarding plaintiff's activities of daily living was consistent with the ability to perform light work. As noted by the ALJ, despite plaintiff's impairments, she has been able to perform many daily living activities. (Tr. 23) Plaintiff testified that she is washes dishes and loads them into the dishwasher, sorts dirty clothes, and helps cook. (Tr. 288) Plaintiff also testified that she goes to church twice a month, which the ALJ incorrectly described as going to church twice a week. (Tr. 23, 288) While not conclusive, plaintiff's daily activities provide further support for the ALJ's determination because they display her doing things she would not be able to do if she was in as much pain as she alleged.

The ALJ further noted that plaintiff "generally lacked the demeanor expected of a credible witness" while testifying and that she had less motivation to return to work because she was receiving substantial workers' compensation benefits and disability retirement benefits. (Tr. 23) Those findings, the findings of the doctors who examined plaintiff, the lack of aggressive treatment, plaintiff's failure to complete physical therapy, and plaintiff's daily activities provide a substantial basis for the ALJ's credibility determination.

**D.  Substantial Evidence**

As discussed above, where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national

economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

Here, plaintiff has failed to persuade the court that the hypothetical the ALJ posed to the VE did not paint an accurate picture of the extent of her physical limitations.  The ALJ limited plaintiff to light work and included in the hypothetical further restrictions designed to accommodate plaintiff's impairments.  These restrictions are consistent with the findings of the examining physicians.  The ALJ gave credit to plaintiff's allegations regarding the existence of her limitations and, to the extent the ALJ discounted plaintiff's allegations regarding the extent of those limitations, he acted properly.  In sum, the court finds, based upon a review of the record as a whole, that the hypothetical question the ALJ posed to the VE was reasonably accurate.  Accordingly, the VE's testimony is sufficient to support the ALJ's determination that plaintiff is not disabled.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                s/Virginia M. Morgan
                                Virginia M. Morgan
                                United States Magistrate Judge

Dated:  April 30, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 30, 2007.

                                s/Jane Johnson
                                Case Manager to
                                Magistrate Judge Virginia M. Morgan